IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MONIKA D.,<br><br>                   Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of<br>Social Security,<br><br>                   Defendant. | MEMORANDUM DECISION AND<br>ORDER<br><br><br>Case No. 4:25-cv-00124-PK<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on Plaintiff's appeal from the decision of the Social

Security Administration denying her application for disability insurance benefits and

supplemental security benefits.[1] The Court affirms the administrative ruling.

## I.  STANDARD OF REVIEW

This Court's review of the administrative law judge's ("ALJ") decision is limited to

determining whether the findings are supported by substantial evidence and whether the correct

legal standards were applied.[2] "Substantial evidence 'means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'"[3] The ALJ is required to

consider all of the evidence, although the ALJ is not required to discuss all of the evidence.[4] If

supported by substantial evidence, the Commissioner's findings are conclusive and must be

---

[1] Docket No. 17, filed March 4, 2026.

[2] *Rutledge v. Apfel*, 230 F.3d 1172, 1174 (10th Cir. 2000).

[3] *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Id.* at 1009–10.

affirmed.[5] The Court must evaluate the record as a whole, including the evidence before the ALJ

that detracts from the weight of the ALJ's decision.[6] However, the reviewing court should not re-

weigh the evidence or substitute its judgment for that of the Commissioner.[7]

## II.  BACKGROUND

A.    PROCEDURAL HISTORY

On August 31, 2022, Plaintiff applied for disability insurance benefits and supplemental

security income benefits, alleging disability beginning on February 15, 2019.[8] The alleged onset

date was later amended to January 27, 2022.[9] The claim was denied initially and on

reconsideration.[10] Plaintiff then requested a hearing before an ALJ,[11] which was held on July 5,

2024.[12] On August 27, 2024, the ALJ found that Plaintiff was not disabled.[13] The Appeals

Council denied review on June 11, 2025,[14] making the ALJ's decision the Commissioner's final

decision for purposes of judicial review.[15]

---

[5] *Richardson*, 402 U.S. at 390.

[6] *Shepherd v. Apfel*, 184 F.3d 1196, 1199 (10th Cir. 1999).

[7] *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).

[8] R. at 187–203.

[9] *Id.* at 26.

[10] *Id*. at 60–95.

[11] *Id*. at 131–32.

[12] *Id.* at 40–59.

[13] *Id.* at 23–39.

[14] *Id.* at 10–15.

[15] 20 C.F.R. §§ 416.1481, 422.210(a).

On November 7, 2025, Plaintiff filed her complaint in this case.[16] On November 13, 2025, both parties consented to a United States Magistrate Judge conducting all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[17] The Commissioner filed an answer and the administrative record on February 2, 2026.[18]

Plaintiff filed her Opening Brief on March 4, 2026.[19] The Commissioner's Answer Brief was filed on June 2, 2026.[20] Plaintiff filed her Reply Brief on June 15, 2026.[21]

B.    RECORD EVIDENCE

Plaintiff sought benefits because of bipolar disorder, anxiety disorder, panic disorder, depression, and suicidal thoughts.[22] Plaintiff claimed poor judgment and impulse control, frequent mood swings, irritability, inability to concentrate and make decisions, low moods, and extreme sadness.[23] She also noted struggling with an eating disorder.[24] Plaintiff's treating physician, Dallin R. Olson, M.D., diagnosed bipolar disorder, generalized anxiety disorder, and severe major depression.[25] Treatment notes demonstrate that Plaintiff's symptoms waxed and

---

[16] Docket No. 1.

[17] Docket No. 9.

[18] Docket No. 16.

[19] Docket No. 17.

[20] Docket No. 22.

[21] Docket No. 23.

[22] R. at 60, 247.

[23] *Id.* at 276.

[24] *Id.* at 277.

[25] *Id.* at 364.

waned, with times of noted improvement and others where her symptoms worsened.[26] These treatment notes also indicated that Plaintiff's symptoms often improved when she was compliant with her prescribed medications.

## C.    THE ALJ'S DECISION

The ALJ followed the five-step sequential evaluation process in deciding Plaintiff's claim. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 27, 2022, the amended alleged onset date.[27] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: bipolar disorder, generalized anxiety disorder, and major depressive disorder.[28] At step three, the ALJ determined that Plaintiff did not meet or equal a listed impairment.[29] At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform full range of work at all exertional levels with certain nonexertional limitations.[30] Then, the ALJ concluded that Plaintiff had no past relevant work.[31] At step five, the ALJ found that there were jobs that exist in significant numbers that Plaintiff could perform and, therefore, she was not disabled.[32]

---

[26] *Id.* at 364–65, 368–69, 372, 375–76, 379–80, 387, 392–93, 407, 416–17, 420, 439, 456, 458, 464, 474, 476, 478, 480, 482, 488, 650, 1407.

[27] *Id.* at 29.

[28] *Id.*

[29] *Id.* at 29–30.

[30] *Id.* at 30–34.

[31] *Id.* at 34.

[32] *Id.* at 34–35.

## III. DISCUSSION

Plaintiff raises a single issue in her brief: whether the ALJ erred in evaluating the medical opinion evidence provided by Dallin R. Olson, M.D.

Dr. Olson completed a Medical Source Statement of Ability to do Work-Related Activities on September 20, 2022.[33] Dr. Olson opined that Plaintiff had moderate limitations in her ability to understand and remember short, simple instructions; carry out short, simple instructions; and interact appropriately with the public, supervisors, and co-workers. He further opined that Plaintiff had marked limitations in her ability to understand and remember detailed instructions; carry out detailed instructions; make judgments on simple work-related decisions; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. When asked what medical/clinic findings supported his opinions, Dr. Olson identified Plaintiff's bipolar disorder, which resulted in "wide fluctuation in mental health on a day to day basis." Dr. Olson further stated that Plaintiff experienced "anger, irritability, depression, [and] hopelessness" and that she was currently "separated from family due to symptoms."

The ALJ found Dr. Olson's Medical Source Statement partially persuasive.[34] The ALJ noted that Dr. Olson's treating relationship with Plaintiff provided support for his opinions, but that the record evidence did not support Dr. Olson's opined marked limitations. The ALJ stated that records showed that Plaintiff's manic episodes were controlled when Plaintiff was adhering

---

[33] *Id.* at 398–400.
[34] *Id.* at 33.

to her prescribed treatment and, even in the absence of treatment, her mental health symptoms could be controlled or did not significantly affect her.

Plaintiff argues that the ALJ's evaluation of Dr. Olson's opinion was deficient. An ALJ is not required to defer to or give any specific weight to medical opinions or prior administrative medical findings.[35] Rather, the ALJ must articulate "how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record."[36] The ALJ determines persuasiveness using the criteria in 20 C.F.R. § 404.1520c(c): (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. The most important criteria for determining persuasiveness are supportability and consistency.[37]

The ALJ must explain how he or she considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings, but is generally not required to explain how he or she considered other factors.[38] The supportability factor addresses how closely connected a medical opinion is to the objective medical evidence and supporting explanations the medical source presents: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be."[39] The consistency factor, on the other hand, compares the medical opinion to evidence from other

---

[35] 20 C.F.R. § 404.1520c(a).

[36] Id. § 404.1520c(b).

[37] Id. § 404.1520c(a), (b)(2).

[38] Id. § 404.1520c(b)(2).

[39] Id. § 404.1520c(c)(1).

sources: "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."[40] "Although the relevant regulations do not prescribe the depth at which the ALJ must discuss those factors, [the ALJ] must provide sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence."[41]

Plaintiff contends that the ALJ inadequately articulated the relevant factors. As to the supportability factor, Plaintiff complains that the ALJ improperly relied on Dr. Olson's treating relationship with Plaintiff, which she points out is a different factor under the regulations. Instead, Plaintiff argues that the ALJ should have evaluated the objective medical evidence and Dr. Olson's written explanations.

The regulations define "objective medical evidence" as "medical signs, laboratory findings, or both."[42] Plaintiff fails to identify any objective medical evidence the ALJ failed to discuss and consider in evaluating Dr. Olson's opinion. While Plaintiff points to her self-reported complaints and PHQ-9 scores, this is subjective evidence from Plaintiff's self-reports.[43] An as

---

[40] *Id*. § 404.1520c(c)(2).

[41] *Harp v. Kijakazi*, No. CV 1:21-0275 KRS, 2022 WL 2341740, at *6 (D.N.M. June 29, 2022) (internal citation, alteration, and quotation marks omitted).

[42] 20 C.F.R. § 404.1513(a)(1).

[43] *See Wahab B. A. v. O'Malley*, No. 23-CV-0816 (JFD), 2024 WL 3028264, at *1 n.2 (D. Minn. June 17, 2024) ("PHQ-9 questionnaires are completed independently by a patient and are intended to reflect subjective, self-reported symptoms."); *L.A.P. v. Kijakazi*, No. 1:20-cv-3178-SKA, 2023 WL 6521119, at *5 (D. Colo. Sept. 26, 2023) (holding that a PHQ-9 score is subjective evidence); *Lim v. Saul*, No. 18-CV- 07519-VKD, 2020 WL 2557000, at *8 (N.D. Cal. May 20, 2020) ("the PHQ-9 questionnaire reflects [the claimant's] reported self-assessment").

evidence from a nonmedical source,[44] the ALJ was not required to articulate the persuasiveness of this evidence.[45] Plaintiff's broader argument that the ALJ did not discuss and consider the medical evidence is contradicted by the record. The ALJ reviewed and discussed that evidence, including Dr. Olson's treatment notes, elsewhere in the decision.[46] Therefore, this does not provide a basis for reversal.[47]

Plaintiff's complaint that the ALJ should have provided more discussion about Dr. Olson's written explanation fares no better because Dr. Olson provided little explanation to support his opinions. When asked to identify the medical/clinical findings that supported his assessment, Dr. Olson made broad comments like "bipolar disorder," "wide fluctional in mental health on a day to day basis," "anger irritability, depression, hopelessness," and "separated from family due to symptoms." This string of generalized statements constitute the entirety of Dr. Olson's explanation. Plaintiff fails to demonstrate how the ALJ could have further evaluated these vague statements. If anything, it appears that the ALJ used Dr. Olson's treating relationship to shore up Dr. Olson's deficient explanation of his opinion, which then allowed the ALJ to find

---

[44] 20 C.F.R. § 404.1513(a)(4) ("Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim. We may receive evidence from nonmedical sources either directly from the nonmedical source or indirectly, such as from forms we receive and our administrative records.").

[45] *Id.* § 404.1520c(d) ("We are not required to articulate how we considered evidence from nonmedical sources using the requirements in paragraphs (a)-(c) in this section.").

[46] *See, e.g.,* R. at 32 (citing R. at 364–65); *id.* (citing R. at 393); *id.* (citing R. at 1407); *id.* at 33 (citing R. at 1407–08).

[47] *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.").

his opinion at least partially persuasive, resulting in nonexertional limitations to accommodate Plaintiff's mental health symptoms. Although the ALJ could have gone into more depth in his explanation, a complete review of the ALJ's decision supports that the ALJ engaged in the necessary analysis.[48]

With respect to the consistency factor, Plaintiff points to evidence supporting greater limitations than those the ALJ included in his RFC assessment. But the fact that there was evidence in support of greater limitations does not necessarily mean the ALJ's decision is not supported by substantial evidence.[49] Where there is substantial evidence to support the ALJ's findings, the Court cannot reverse the ALJ just because he could have made a different decision.[50] Here, the ALJ explained why he found Dr. Olson's marked limitations inconsistent with the record and supported this conclusion with citations to relevant evidence. This is sufficient.

Plaintiff further argues that the ALJ erred in relying on records from outside the relevant period. The mere fact that the records the ALJ cited fell outside the relevant period is not reason enough to completely disregard them. Medical evidence from an earlier period may be considered to the extent it sheds light on the nature and severity of claimant's condition during

---

[48] So long as the court can "trace the path of an adjudicator's reasoning," the ALJ has met the articulation requirements. *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)).

[49] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal quotation marks and citation omitted).

[50] *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990) ("We must evaluate the record to ascertain whether there is evidence to support the ALJ's decision, regardless of whether we would have reached a different result based on the record.").

the relevant period.[51] Further, Plaintiff's subjective reports of improvement, while not objective evidence, provide some support for the ALJ's conclusion that Dr. Olson's opinions were inconsistent with the record. In sum, the ALJ provided an adequate explanation, supported by substantial evidence, as to the persuasiveness of Dr. Olson's opinion.

## IV. CONCLUSION

Having made a thorough review of the entire record, the Court affirms the Commissioner's decision.

DATED this 23rd day of June 2026.

BY THE COURT:

PAUL KOHLER
United States Magistrate Judge

---

[51] *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ.").